UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| RYAN LAWYER, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | File No. 1:16-cv-62-jgm |
| : | |
| DREW COTA; BEN PATNODE; : | |
| and DEREK ROLANDINI, in their : | |
| individual capacities as Troopers for : | |
| the Vermont State Police, : | |
| : | |
| Defendants. : | |
| _____ : | |

RULING ON DEFENDANTS' MOTION TO DISMISS
(Doc. 21)

I.  Introduction

Plaintiff Ryan Lawyer sues Drew Cota, Ben Patnode, and Derek Rolandini, in their individual capacities as Vermont State Police ("VSP") Troopers.  (Doc. 18 ("Am. Compl.").)  Lawyer asserts claims of false arrest, failure to adequately investigate, malicious prosecution, abuse of process, and deprivation of liberty without due process, under 42 U.S.C. § 1983 and Vermont state law, and intentional infliction of emotional distress and negligent infliction of emotional distress, under Vermont state law.  Id. ¶¶ 31-55.  Accordingly, jurisdiction is based on the existence of a federal question.  Id. ¶ 1.  The claims arise out of Lawyer's arrest and prosecution for drug possession.  Lawyer seeks a declaratory judgment, compensatory and punitive damages, and attorney's fees.  Id. at 13.  The Defendants move to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and (6).  (Doc. 21.)  Lawyer filed a response to the motion (Doc. 22) and Defendants filed a reply (Doc. 23).  Lawyer also filed a sur-reply.  (Doc. 24.)  For the reasons discussed below, the motion to dismiss is granted in part and denied in part.

II.     Background

The following facts are assumed to be true for purposes of the pending motions and are gleaned from the complaint. On June 27, 2014, Lawyer, a resident of East Fairfield, was arrested for impeding a public officer and disorderly conduct after failing to heed Trooper Cota's orders to remain in the stopped vehicle in which Lawyer was a passenger. Lawyer, who was intoxicated, was lodged at the VSP barracks in St. Albans in a holding cell equipped with functional audio and video surveillance cameras. Trooper Cota later stated under oath that the holding cell in which Lawyer was placed was "clean," i.e. had been searched for contraband and none was found.

While handcuffed to the wall and sitting on a bench in the cell, Lawyer noticed an object "previously placed in a portion of the sink." (Compl. ¶ 15.) He dislodged and opened it with his foot, spilling approximately 100 bags of heroin onto the floor of the holding cell. Lawyer lost interest and laid down on the bench. Trooper Rolandini later briefly entered the cell, observing Lawyer asleep and the heroin bags on the floor. Trooper Rolandini returned to the cell with Troopers Cota and Patnode, roused Lawyer and the troopers inquired about the heroin. A still-intoxicated Lawyer replied unintelligibly. In an affidavit in support of the charge, Trooper Cota falsely averred Lawyer admitted to concealing the heroin in his shoe and that the holding cell was "clean." The Defendants held Lawyer on suspicion of felony possession of heroin and contacted the state court regarding setting felony bail. Lawyer's bail was increased from $500 to $10,000, resulting in his family paying an $1100 non-refundable commission fee to a bail bondsman.

The Franklin County State's Attorney's office charged Lawyer with two felonies, impeding a public officer and possession of heroin, and a misdemeanor count of unlawful mischief. Lawyer alleges there was no probable cause to initiate the criminal proceeding. (Compl. ¶¶ 21, 24, 39.) He further alleges the VSP has rules and regulations regarding the use and maintenance of video and audio recording equipment that Defendants were required to adhere to, however, they did not

2

review the recordings from the cell. Id. ¶¶ 13, 22. He was arraigned on June 30, 2014. Based on a VSP press release, local media reported Lawyer had been arrested on these charges resulting in severe damage to his reputation, including almost losing his longstanding employment. Lawyer was released from custody on July 1, 2014. On July 10, the State's Attorney dismissed the heroin possession charge.

Lawyer alleges the Troopers violated his constitutional rights and the laws of the state of Vermont. In Count One, Lawyer alleges the Troopers negligently, recklessly, or with gross negligence caused him to be falsely arrested. (Compl. ¶¶ 31-32.) In Count Two, Lawyer alleges the Troopers failed to properly investigate the alleged criminal act, including reviewing the "procedurally mandated audio and video recording" of the holding cell. Id. ¶¶ 33-36. In Count Three, he alleges the Troopers subjected him to malicious prosecution because there was no probable cause to initiate the criminal proceeding charging him with possession of heroin. Id. ¶¶ 37-41. In Count Four, he alleges the Troopers used legal process to retaliate against him. Id. ¶¶ 42-44. In Count Five, Lawyer alleges the Troopers violated his right to be free from felony charges in the absence of probable cause without due process of law. Id. ¶¶ 45-48. Lawyer further alleges state law claims of intentional and negligent infliction of emotional distress. Id. ¶¶ 49-55.

III. Discussion

    A. Standard of Review

A court should grant a Rule 12(b)(1) motion to dismiss if it is not authorized by statute or the Constitution to adjudicate the plaintiff's claims. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal rather than the factual sufficiency of a complaint. See, e.g., Sims v. Ortiz, 230 F.3d 14, 20 (2d Cir. 2000). The

Court will grant a motion to dismiss only if the pleader fails to show a "plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). On both Rule 12(b)(1) and Rule 12(b)(6) motions, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Seemann v. U.S. Postal Serv., No. 2:11-cv-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (quoting Starr v. Georgeson S'holder, Inc., 412 F.3d 103, 109 (2d Cir. 2005)). Though the court must accept as true all factual allegations, this requirement "is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Turkmen v. Hasty, 789 F.3d 218, 233 (2d Cir. 2015).

"[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

B.  42 U.S.C. § 1983

Section 1983 is not a source of substantive rights but is "a method for vindicating federal rights elsewhere conferred." Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege the deprivation of a right, privilege, or immunity secured by the Constitution or laws by a person acting under color of state law. 42 U.S.C. § 1983.

The threshold inquiry in a § 1983 suit requires a court to "identify the specific constitutional right" at issue. Albright v. Oliver, 510 U.S. 266, 271 (1994). A claim challenging pretrial detention falls within the scope of the Fourth Amendment. Gerstein v. Pugh, 420 U.S. 103, 114 (1975) (holding a pretrial restraint on liberty is unlawful unless a judge first makes a reliable finding of probable cause). An objection to a pretrial deprivation of liberty may invoke the Fourth Amendment when the deprivation occurs after legal process commences because pretrial detention

can violate the Fourth Amendment both when it precedes and when it follows the start of legal process in a criminal case. Manuel v. City of Joliet, 137 S. Ct. 911, 918 (2017). Plaintiffs can, subject to qualified immunity, recover damages that are proximately caused by a Fourth Amendment violation. See, e.g., Heck v. Humphrey, 512 U.S. 477, 483 (1994). The Court, however, must determine the elements of an action seeking damages for a violation. Manuel, 137 S. Ct. at 920 (citing Carey v. Piphus, 435 U.S. 247, 257-58 (1978)).

        1.      False Arrest

A claim for false arrest under § 1983 requires a plaintiff to show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012). A false arrest action is substantially similar under Vermont law. Connary v. Field, No. 12-276, slip op. at 3 (Vt. Feb. 14, 2013) (requiring proof the defendant "intended to confine plaintiff without plaintiff's consent, and that confinement was not otherwise privileged."). "A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest." Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2000) (holding dismissal on summary judgment proper when plaintiff could not show he was arrested without probable cause).

Lawyer's complaint alleges he was detained and confined for four days on charges for which there was no probable cause. At the motion to dismiss stage, these allegations are sufficient to state a claim for false arrest. Defendants respond that a state court judge determined there was probable cause. The Court will not resolve this factual dispute at this stage in the litigation in light of Lawyer's allegations of false statements in the affidavit(s) provided to the judge. See Lay v. Pettengill, 38 A.3d 1139, 1147 (Vt. 2011) (noting a plaintiff can challenge a trial court's probable cause determination by presenting "a plausible suggestion that the finding of probable cause would

not have been reached were it not for some irregularity or impropriety"). Defendants motion to dismiss Lawyer's claim of false of arrest (Count One) is denied.

### 2. Failure to Adequately Investigate

This Court has recently declined to find a duty exists under Vermont law to conduct a reasonable criminal investigation. Simuro v. Shedd, 176 F. Supp. 3d 358, 374 (D. Vt. 2016). The Second Circuit does not recognize a cause of action for failure to investigate under the Due Process Clause of the Constitution. Grega v. Pettengill, 123 F. Supp. 3d 517, 536 (D. Vt. 2015) (noting "the Second Circuit has yet to recognize a claim that a state officer's reckless failure to investigate all aspects of a crime violates the due process rights of the accused").

The Second Circuit does recognize a civil claim for the "mishandling or suppression of exculpatory evidence," requiring proof "(1) that [plaintiff] has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right; and (3) that the officers' conduct shocks the conscience." Russo v. City of Bridgeport, 479 F.3d 196, 205 (2d Cir. 2007) (internal citation and quotations omitted). The claim seeks to protect against "a sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence." Id. Accordingly, this claim is best analyzed under a claim of false arrest or malicious prosecution as the alleged conduct is violative of Fourth Amendment rights. Because Lawyer alleges inadequate investigation led to his unlawful arrest and to unjustified criminal charges against him, see Compl. ¶ 36, his stand-alone failure to investigate claim[1] is dismissed and Defendants' motion to dismiss is granted as to this claim.

---

[1] Lawyer argues Defendants cite only non-binding case law for the proposition that a claim of failure to investigate has no independence from claims of false arrest or malicious prosecution and refers the Court to argument in his opposition to Defendants' initial motion to dismiss. (Doc. 22 at 3 (citing Doc. 13 at 8-9).) The cases cited in Document 13, however, are also non-binding cases from the Sixth, Seventh, Eighth, and Eleventh Circuit Courts of Appeals. (Doc. 13 at 8-9.)

3. <u>Malicious Prosecution</u>

A Fourth Amendment claim based on malicious prosecution under § 1983 is governed by state law. Vermont law provides a plaintiff filing suit for malicious prosecution must establish the defendant "instituted the proceeding against him (1) without probable cause, (2) with malice, and that (3) the proceeding terminated in [his] favor." <u>Anello v. Vinci</u>, 458 A.2d 1117, 1119 (Vt. 1983). Depending on context, "[m]alice may be inferred from a lack of probable cause." <u>Osuna v. City of New York</u>, No. 08 Civ. 4759, 2009 WL 2356424, at *5 (S.D.N.Y. July 30, 2009).

Here, Lawyer alleges there was not probable cause to charge him with drug possession and the prosecution terminated in his favor with the dismissal of the charges. At the motion to dismiss stage, the Court draws all inferences in plaintiff's favor, and accordingly, infers the existence of malice from the alleged lack of probable cause. Further, in Court Four, Lawyer alleges Defendants retaliated against him for his "drunken and loutish behavior." (Compl. ¶ 43.) Defendants' motion to dismiss Lawyer's malicious prosecution claim (Count Three) is denied.

4. <u>Abuse of Process</u>

In Count Four, Lawyer asserts a claim of abuse of process on the grounds the Defendants employed legal process to retaliate against him "for his drunken and loutish behavior." (Compl. ¶ 43.) To state a § 1983 claim for abuse of process, a plaintiff must establish "the defendants had an <u>improper</u> purpose in instigating the action and that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." <u>Morales v. City of New York</u>, 752 F.3d 234, 238 (2d Cir. 2014) (internal alterations and citation omitted). Under Vermont law, "a plaintiff alleging the tort of abuse of process is required to plead and prove: 1) an illegal, improper or unauthorized use of a court process; 2) an ulterior motive or an ulterior purpose; and 3) resulting damage to the plaintiff." <u>Wharton v. Tri-State Drilling & Boring</u>, 824 A.2d 531, 536 (Vt. 2003) (internal quotation marks and citation omitted).

Lawyer's allegation that Defendant Cota included Lawyer's fabricated confession to having the heroin concealed in his shoe and the false statement the holding cell was "clean" in his affidavit of probable cause is sufficient to allege improper use of a court process. He also sufficiently alleges Cota aimed to achieve the collateral or ulterior purpose of retaliation against him and that the abuse of process led to damage of increased bail and further detention. Accordingly, at the motion to dismiss stage, Lawyer has stated a claim for abuse of process under state and federal law against Defendant Cota. Defendants' motion to dismiss Count Four is granted as to Defendants Patnode and Rolandini because Lawyer does not allege they participated in the abuse of legal process by signing an affidavit containing falsities, or in any other way.

### 5. Deprivation of Liberty Without Due Process of Law

In Count Five, titled deprivation of liberty without due process of law, Lawyer asserts Defendants had an obligation not to fabricate or falsify evidence or to suppress exculpatory evidence, they did not comply with that obligation, and he was seized as a result. The allegation regarding suppression of evidence states a claim that fits the Russo claim for "mishandling or suppression of exculpatory evidence," 479 F.3d at 205. For the same reasons his failure to adequately investigate claim is dismissed, Count Five is dismissed to the extent he alleges evidence suppression. The allegations will be analyzed under his false arrest and/or malicious prosecution claims.

Lawyer also alleges Defendants fabricated or falsified evidence, presumably his confession to possessing the heroin in his shoe, see Compl. ¶¶ 20, 47, leading to his seizure. A criminal defendant has a constitutional right "not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000). A plaintiff who makes a falsified evidence claim must allege that "an (1) investigating official (2) fabricate[d] evidence (3) that [was] likely to influence a jury's decision, (4) forward[ed] that

8

information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012). The deprivation of liberty must be caused by the evidence falsification. See Malley v. Briggs, 475 U.S. 335, 345 n.7 (1986) ("§ 1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.").

Lawyer alleges Defendant Cota, an investigating official, fabricated Lawyer's confession to having the heroin concealed in his shoe, and as a result of including this in the affidavit of probable cause, the Judge set a much higher bail leading to his continued detention until his family could arrange to have him released and the State's Attorney's office proceeded with a drug possession charge. At the motion to dismiss stage, drawing all reasonable inferences in Lawyer's favor, the Court will assume the alleged fabricated evidence would influence a jury's decision and that his detention was caused by the falsification. While this claim survives against Defendant Cota, it too is analyzed under the Fourth Amendment and not the due process clause.

Accordingly, Defendants' motion to dismiss is granted as to Count Five in part. The surviving claim is for falsification of evidence against Defendant Cota. Count Five is dismissed against Defendants Patnode and Rolandini and to the extent it alleges suppression of evidence.

C. Qualified Immunity

Defendants assert they are entitled to qualified immunity because they did not violate any of Lawyer's clearly established rights. (Doc. 21 at 8-10.) Under federal law, a police officer is entitled to qualified immunity "where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007). The same standard for qualified immunity exists under Vermont state law. See Stevens v. Stearns, 833 A.2d 835, 840 (2003). "Because

9

qualified immunity is an immunity from suit rather than a mere defense to liability," the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 231-32 (2009 (internal quotation marks and citation omitted). As noted above, however, at the motion to dismiss stage, a "stringent standard" applies. McKenna, 386 F.3d at 436.

As the Second Circuit has noted, "[t]here is no doubt that the right to be free from arrest without probable cause [i]s clearly established." Jenkins, 487 F.3d at 87. Given Lawyer's allegation that his seizure and subsequent prosecution was without probable cause as a result of the fabricated and false statements in the affidavit of probable cause, the Court will not dismiss the remaining claims on the basis of qualified immunity at the motion to dismiss stage. Defendants' insistence they are entitled to dismissal because the state court found probable cause ignores Lawyer's allegation the finding was based on the false affidavit. Manuel, 137 S. Ct. at 920 n.8 ("[I]f the proceeding is tainted–as here by fabricated evidence–and the result is that probable cause is lacking, then the ensuing pretrial detention violated the confined person's Fourth Amendment rights."); Lay, 38 A.3d at 1147 (noting the presumption probable cause exists if found by a court is rebuttable "if a plaintiff can demonstrate that the finding . . . was based on misleading, fabricated, or otherwise improper evidence"). Patnode and Rolandini are entitled to qualified immunity, however, because they did not sign the affidavit of probable cause.

    D.    State Law Claims

        1.    Intentional Infliction of Emotional Distress

Lawyer claims intentional infliction of emotional distress ("IIED") against defendants Cota, Patnode, and Rolandini. (Compl. ¶¶ 49-52.) He alleges Defendants' actions with regard to his "arrest, lodging, detention and ultimately an[] unjustified charging and prosecution" were

intentionally or recklessly undertaken in an unreasonable manner causing him severe mental and emotional pain and suffering. Id.

A plaintiff alleging an IIED claim is required to show "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community." Farnum v. Brattleboro Retreat, Inc., 671 A.2d 1249, 1256 (Vt. 1995). To sustain an IIED claim, a plaintiff must show not only outrageous conduct, but also that it was done intentionally or with reckless disregard of the probability of causing emotional distress, and resulted in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct. Fromson v. Vermont, 848 A.2d 344, 347 (Vt. 2004). The test is objective: the plaintiff must show the harm resulting from the distress was so severe that no reasonable person could be expected to endure it. Farnum, 671 A.2d at 1256. The plaintiff bears a heavy burden. Dulude v. Fletcher Allen Health Care, Inc., 807 A.2d 390, 398 (2002). Whether the alleged conduct was so extreme that a trier of fact could find liability is a threshold question of law. Farnum, 671 A.2d at 1256. Accordingly, the Court must make the initial determination of whether a jury could reasonably find the alleged conduct satisfies the elements of IIED. Fromson, 848 A.2d at 347.

Lawyer alleges Patnode and Rolandini participated in questioning him about the heroin packets Rolandini observed but failed to review the audio and video recordings of the holding cell. (Compl. ¶¶ 19-20, 22.) An alleged failure to investigate is not extreme and outrageous conduct in Vermont. Grega, 123 F. Supp. 3d at 550 (citing Baptie v. Bruno, 88 A.3d 1212, 1219 (Vt. 2013)). Patnode and Rolandini made "some effort" to investigate the apparent drug possession by questioning Lawyer. Id. (holding where defendants made "some effort" to investigate, a claim of IIED cannot lie from their investigations' alleged failures). As a matter of law, Defendants' Patnode and Rolandini's alleged conduct was not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community." See

11

Farnum, 671 A.2d at 1256. Accordingly, the Court determines a reasonable jury could not find their alleged conduct satisfies the elements and the motion to dismiss Lawyer's IIED claims against Patnode and Rolandini is granted.

With regard to Cota, however, Lawyer alleges he also misrepresented that the holding cell was clean and that Lawyer confessed to possessing the heroin. (Compl. ¶¶ 14-15, 20-21.) Fabrication of evidence "may constitute the extreme and outrageous behavior sufficient to support a claim of IIED." Grega, 123 F. Supp. 3d at 550 (citing Pitt v. District of Columbia, 491 F.3d 494, 506 (D.C. Cir. 2007)). Cota's alleged fabrication of the confession and misrepresentation regarding the status of the holding cell may be outrageous enough for a jury to reasonably find the conduct prong of an IIED claim. Lawyer also alleges the conduct was intentional or reckless and it caused severe emotional distress. Accordingly, at this stage of the litigation, Lawyer has successfully stated a claim of IIED against Cota and the motion to dismiss is denied as to him.

2. Negligent Infliction of Emotional Distress

Lastly, Lawyer claims Defendants subjected him to the negligent infliction of emotional distress ("NIED"). (Compl. ¶¶ 53-55.) To state a claim for NIED, "a plaintiff must make a threshold showing that he or someone close to him faced physical peril." Brueckner v. Norwich Univ., 730 A.2d 1086, 1092 (Vt. 1999). A plaintiff may establish a claim by showing he suffered a physical impact. Id. If plaintiff has not suffered an impact, he must show "(1) he was within the 'zone of danger' of an act negligently directed at him by defendant, (2) he was subjected to reasonable fear of immediate personal injury, and (3) he in fact suffered substantial bodily injury or illness as a result." Id. Lawyer does not allege he suffered a physical impact that was within a zone of danger or was subjected to reasonable fear of personal injury. Accordingly, Lawyer has not stated a claim for NIED and Defendants' motion to dismiss is granted as to the NIED claim.

IV.    Conclusion

For the reasons discussed above, Defendants' motion to dismiss the claims against them in their individual capacities (Doc. 21) is granted in part and denied in part.  Count Two is dismissed in its entirety; Counts Four and Five and the state law IIED claim are dismissed as to Defendants Patnode and Rolandini; and the state law NIED claim is dismissed in its entirety.

The remaining claims are for false arrest (Count One); malicious prosecution (Count Three); and abuse of process (Count Four), falsification of evidence, under the Fourth Amendment (Count V) and IIED under state law, against Defendant Cota.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 14th day of June, 2017.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge